2020 IL App (1st) 200528

FIRST DISTRICT
FOURTH DIVISION
December 4, 2020

Nos. 1-20-0528 & 1-20-0592 cons.


|  |  |  |
|---|---|---|
| SHARON EVANS, SPECIAL ADMINISTRATOR OF THE ESTATE OF QUAVIA EVANS, DECEASED, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 L 7917 |
| VIKAS PATEL, M.D., APP OF ILLINOIS ED, PLLC, and WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC D/B/A VISTA MEDICAL CENTER EAST, | ) ) ) ) ) ) | Honorable Kathy M. Flanagan, Judge Presiding. |
| Defendants-Appellants. | ) | |


JUSTICE REYES delivered the judgment of the court, with opinion.
Justice Hall concurred in the judgment and opinion.
Presiding Justice Gordon specially concurred, with opinion.


**OPINION**

¶ 1    Plaintiff Sharon Evans, as special administrator of the estate of decedent Quavia Evans, brought a medical malpractice action in the circuit court of Cook County against defendants Vikas Patel, M.D. (Dr. Patel), APP of Illinois ED, PLLC (AAP), and Waukegan Illinois Hospital Company, LLC d/b/a Vista Medical Center East (Vista) (collectively defendants). Dr. Patel and APP, joined by co-defendant Vista, filed a motion seeking to transfer plaintiff's action to the circuit court of Lake County under the doctrine of *forum non conveniens*, which the circuit court

denied.

¶ 2 On permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Feb. 26, 2010), defendants contend that the circuit court abused its discretion when it denied the *forum non conveniens* motion because the court failed to properly balance the relevant private and public interest factors and gave undue weight to Dr. Patel's residence in Cook County. For the reasons that follow, we affirm.

¶ 3 BACKGROUND

¶ 4 The parties agree to the relevant facts of this case. On July 22, 2017, Quavia, a type 1 diabetic, was transported via ambulance by the Waukegan Fire Department from her residence in Lake County to Vista also located in Lake County. Scott Vandenbroucke and Paul Dawson (both employed in Lake County) were the paramedics who transported Quavia. She was evaluated at Vista by Dr. Patel (a Cook County resident) with Joy Ogden (a Lake County resident) acting as Quavia's nurse. Quavia was diagnosed and treated for diabetic ketoacidosis. Dr. Patel discharged Quavia from the emergency room a few hours later. That day, Quavia was seen by plaintiff and her friend, LaDonna Givens (both Lake County residents). At 2 a.m. the following morning, the Waukegan Fire Department paramedics Vandenbroucke and Dawson were called to Quavia's home. They found her in full arrest and transported her to Vista where she was pronounced dead less than an hour later. An autopsy was performed by Dr. Randall McGivney, who opined that Quavia died from diabetic ketoacidosis. At the time Quavia died, she was survived by two minor children who also resided in Lake County.

¶ 5 Thereafter plaintiff filed a two-count complaint in the circuit court of Cook County against the defendants seeking damages arising out of the death of the decedent on July 23, 2017, as a result of the negligent medical care provided by the defendants on July 22, 2017, in Lake

County, Illinois.

¶ 6     The parties engaged in written discovery.  Pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018), plaintiff disclosed as witnesses herself, Givens, Dr. Patel, Ogden, Dr. McGivney, and paramedics Vandenbroucke and Dawson.  Defendants collectively disclosed over 90 trial witnesses including Quavia's two minor children, Lawrence Bailey and Andre Sorrels (the fathers of the two minor children), Clifford Miller (Quavia's father), and more than 80 medical providers.  Of these trial witnesses over 80 either resided or worked in Lake County residents, six resided or worked in Cook County, and six were connected to other counties or out of state.

¶ 7     Dr. Patel and APP filed a motion to transfer venue pursuant to *forum non conveniens* seeking to move the cause from Cook County to Lake County.  The motion was thereafter joined by co-defendant Vista.  In the motion, defendants contended that as the complained of medical care occurred in Lake County, plaintiff resides in Lake County, the decedent resided and died in Lake County, and most of the witnesses reside in or near Lake County, that Lake County is the more appropriate forum in which to try the case.

¶ 8     Defendants further argued that the litigation had no material connection to Cook County whereby plaintiff, a Lake County resident, was suing for alleged negligence that occurred in Lake County, to a decedent who was a Lake County resident.  Accordingly, this matter was a purely local controversy that should be decided locally in Lake County.  In addition, defendants observed that Lake County has a less congested court docket than Cook County.  Defendants concluded by arguing that by filing her lawsuit in Cook County plaintiff was forum shopping and a balancing of the public and private interest factors weighed in favor of a transfer to Lake County.

¶ 9     In support of their motion, defendants attached a list of approximately 90 witnesses gleaned from the parties' discovery responses.  Of these 90 plus witnesses, 80 indicated their addresses (either work or residential) indicated they were located in Lake County.  Defendants further indicated, based on the witness' address and utilizing Google Maps, the number of miles to each of the respective courthouses in Cook and Lake County.  For those witnesses who resided in Lake County, it was evident that they were closer in proximity to the Lake County courthouse than to the Cook County courthouse (Daley Center).  Defendants also attached hotel and parking information which demonstrated Lake County was cheaper for these services than Cook County.

¶ 10    Defendants further included the 2017 Annual Report of Illinois Courts which demonstrated the Cook County docket was more congested than the Lake County docket. Specifically, defendants noted that by the end of that year, there were 136,396 cases pending in Cook County.  In contrast, by the end of the year 2017, there were only 39,016 pending cases in Lake County.  Defendants argued that in 2017, Cook County had more than three times the number of pending cases than Lake County did.  Additionally, Cook County had a 93.1% clearance rate concerning civil lawsuits, while Lake County's clearance rate was much higher for civil lawsuits, at 98.8%.

¶ 11    Defendants submitted two affidavits in support of their motion.  In the first affidavit, Dr. Patel averred that he works at Vista in Lake County, at a private practice in Arlington Heights in Cook County, and at Elmhurst Hospital in DuPage County.  He further averred that he resides in the northern suburbs of Cook County.  According to Dr. Patel, trial in Lake County was preferable due to the commuting time, the possible length of the trial, and his patient and family obligations.

¶ 12    In the second affidavit Joy Ogden, a registered nurse, averred that she resides in Lake County, works from home four days a week, and goes into work in DuPage County one day a week. Ogden attested that she resides 6.3 miles from the Lake County courthouse and 44.2 miles from the Daley Center. She also stated that from her DuPage office it is 20.5 miles to the Daley Center. According to Ogden, it would be "extremely more inconvenient" to attend the trial in Cook County.

¶ 13    In response, plaintiff maintained her choice of venue was proper where Dr. Patel resides and works in Cook County. She further contended that the over 90 witnesses identified by defendants would likely not be called and those who would testify would likely only need to testify on one day. In addition, the documentary evidence and witness testimony could be easily produced in either forum and, in fact, many witnesses would be testifying by way of videotaped evidence depositions. Plaintiff further argued that the witnesses she intended to call signed a declaration stating that litigating the case in Cook County would not be inconvenient. Lastly, plaintiff asserted that defendants failed to meet their burden to demonstrate that the public and private interest factors strongly favor transfer to Lake County.

¶ 14    Plaintiff attached to her response sworn declarations from Givens, Vandenbroucke, Dawson, and Dr. McGivney who each averred that appearing for trial in Cook County would not be inconvenient.

¶ 15    In reply, defendants maintained that their disclosure of 90 witnesses was made in good faith and merited the matter being moved to Lake County for the convenience of these witnesses.

¶ 16    Without holding argument, the circuit court denied defendants' *forum non conveniens* motion. In the written ruling, the circuit court issued the following findings. In regard to the ease of access to the sources of proof in the case and the convenience to the parties, the court

found these factors weighed in favor of Cook County. The circuit court found that "[r]ealistically, the majority of these [90] witnesses will not be called to testify at trial" and a "vast majority" would testify via deposition which would take place in the county convenient to the deponents. And though the court noted that most of the witnesses resided in Lake County, the circuit court stressed that six were residents of Cook County, and six others were either out of state or in a different county.

¶ 17    Regarding Dr. Patel, the circuit court observed the inconvenience he averred to in his affidavit, but found he resides in Cook County and is closer to the Daley Center. The court further noted that regardless of where the trial was conducted, he would have to obtain childcare and coverage for his patients. The court stated that this would be true for Ogden as well.

¶ 18    With regard to documentary evidence, the circuit court found that defendants did not meet their burden to demonstrate that why any medical records or other documentary evidence located in Lake County could not be easily produced for trial in Cook County or why access to that evidence would be more difficult in Cook County. The court observed that, "In any event, electronic formatting and reproduction of documents and records makes the location of documentary evidence less important." As to these factors, the circuit court found that defendants failed to demonstrate that trying a case in Lake County would be substantially more appropriate and convenient to the parties and therefore these factors did not weigh in favor of transfer.

¶ 19    As to the availability of compulsory process for attendance of unwilling witnesses, the circuit court found that the factor did not weigh in favor of transfer because compulsory process was available under Illinois Supreme Court Rule 237. The court also found that defendants failed to demonstrate that the cost of obtaining the testimony of willing witnesses would be

greater in Cook County than it would be in Lake County.

¶ 20    The circuit court did find that the jury viewing the scene would weigh in favor of transfer but noted that such a viewing would be unlikely in this case.

¶ 21    As to other practical considerations, the circuit court found that the expense and distance between Cook County and Lake County is so insubstantial that it became a battle over minutiae and any parking costs could be eliminated by use of the commuter train.

¶ 22    Regarding the public interest factors, the circuit court found that docket congestion did favor a transfer to Lake County.  In so finding, the court noted the 2018 Annual Report of Illinois Courts which demonstrated that there were 454 cases in Cook County in which jury verdicts over $50,000 were rendered, with a period of time from filing to verdict of 30.1 months.  The same statistics demonstrated that in Lake County, there was one such reported case with a period of time from filing to verdict of 25 months.  The court also acknowledged that, "While these statistics show that Cook County has a more congested docket, they also show that Cook County [is] much more efficient at disposing of its great number of jury cases over $50,000."

¶ 23    The circuit court further found that Cook County had a significant interest in deciding the matter locally and there was no unfairness of imposing jury duty upon Cook County residents where the complained of medical negligence was committed by a Cook County resident physician who also practices medicine in Cook County.

¶ 24    The circuit court concluded that the balance of the public and private interest factors weighed in favor of plaintiff's choice of forum.  In so deciding, the circuit court noted that while plaintiff is not a Cook County resident and the alleged medical negligence did not occur in Cook County, plaintiff is still entitled to some deference in her choice of forum.  Thus, the court ultimately found that defendants failed to meet their burden to demonstrate that the factors

strongly favored transfer to Lake County.

¶ 25    Thereafter, defendants filed in this court a petition for leave to appeal pursuant to Rule 306(a)(2).  We granted the petition, and this appeal follows.

¶ 26                                ANALYSIS

¶ 27    On appeal, defendants contend that the circuit court abused its discretion when it denied their motion to transfer the cause from Cook County to Lake County, Illinois.  Specifically, defendants maintain that the circuit court gave Dr. Patel's residence in Cook County and part-time clinic work in northern Cook County undue weight.  Defendants further assert that the circuit court failed to properly consider that an inference of forum shopping arises when a plaintiff has no connection to the venue.  For the reasons which follow, we affirm the determination of the circuit court.

¶ 28                           Standard of Review

¶ 29    The determination of a *forum non conveniens* motion lies within the sound discretion of the circuit court.  *Lagenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006) (quoting *Dawdy*, 207 Ill. 2d at 176).  On review, the circuit court's determination will be reversed only if it can be shown that the court abused its discretion in balancing the relevant factors.  *Id.*  The "abuse of discretion" standard of review is the most deferential standard of review.  *In re D.T.*, 212 Ill. 2d 347, 356 (2004).  Consequently, it is "traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial."  *Id.* When an abuse of discretion standard is applicable, the actions of the trial court will not be disturbed on appeal unless they are "clearly against logic."  *Miranda v. Walsh Group, Ltd.*, 2013 IL App (1st) 122674, ¶ 16.  In such an instance, the question is not whether the reviewing court agrees with the action taken by the trial court, but whether the trial court "acted arbitrarily,

without employing conscientious judgment, or whether, in view of all of the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000); see *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003). We will thus turn to the record to determine if there was any abuse of discretion, but first, we set forth the controlling principles relating to *forum non conveniens*.

¶ 30                          *Forum Non Conveniens*: Controlling Principles

¶ 31     The Illinois venue statute provides: "every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2018). The doctrine of *forum non conveniens* assumes that there is more than one forum with the power to hear the case. *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). If there exists more than one potential forum, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum. *Dawdy*, 207 Ill. 2d at 171; *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12. The doctrine is based on considerations of fundamental fairness and sensible, effective judicial administration. *Id.* The doctrine allows the court in which the action was filed to decline jurisdiction and direct the lawsuit to an alternative forum that the court determines can better serve the convenience of the parties and the ends of justice. *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991). *Forum non conveniens* applies on both an interstate and intrastate basis. *Fennell*, 2012 IL 113812, ¶ 13; see *Torres v. Walsh*, 98 Ill. 2d 338, 351 (1983) (recognizing this fact and setting forth the same factors we are to consider in an

interstate *forum non conveniens* motion). "In other words, the doctrine may be applied where the choice is between forums in the same state as well as when the choice is between forums in different states." *Dawdy*, 207 Ill. 2d at 176. Thus, the doctrine may be applied where the choice is between forums in different states as well as in the same state. *Fennell*, 2012 IL 113812, ¶ 13; see *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 553-54 (1992) (in an intrastate case, a plaintiff's "home forum" is the plaintiff's home county).

¶ 32    Each case, however, is unique and must be considered on its own facts. *Id.* ¶ 21. In determining whether the doctrine of *forum non conveniens* applies, the circuit court conducts an unequal balancing test to determine whether the plaintiff's chosen forum prevails. *Taylor v. Lemans Corp.*, 2013 IL App (1st) 130033, ¶ 15; see *Wieser v. Missouri Pacific Railroad Co.*, 98 Ill. 2d 359, 366 (1983) ("This deference to plaintiff's choice of forum is commonly referred to as an unequal balancing test."). The balance of factors must strongly favor transfer of the case before the plaintiff can be deprived of his chosen forum. *First American Bank v. Guerine*, 198 Ill. 2d 511, 526 (2002). The trial court does not weigh the private interest factors against the public interest factors. *Id.* at 518. Rather, the trial court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors transfer. *Id.* at 518. The private interest factors include: (1) convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make a trial easy, expeditious, and inexpensive. *Fennell*, 2012 IL 113812, ¶ 15. The public interest factors include: (1) the administrative difficulties caused when litigation is handled in congested venues; (2) the unfairness of imposing jury duty upon residents

of a community with no connection to the litigation; (3) and the interests of having local controversies decided locally. *Id.* ¶ 16. "The defendant bears the burden of showing that the relevant private and public interest factors 'strongly favor' defendant's choice of forum." *Taylor*, 2013 IL App (1st) 130033, ¶ 16 (quoting *Langenhorst*, 219 Ill. 2d at 444). The defendant, however, cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 837 (1998).

¶ 33     An additional consideration under the *forum non conveniens* doctrine is deference to the plaintiff's choice of forum. *Dawdy*, 207 Ill. 2d at 173. A plaintiff's "home forum" for the purpose of an interstate *forum non conveniens* motion is the plaintiff's home State. *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 553 (1992). "A plaintiff's right to select the forum is substantial." *Dawdy*, 207 Ill. 2d at 173. "Unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. However, the plaintiff's choice is not entitled to the same weight or consideration in all cases." *Fennell*, 2012 IL 113812, ¶ 18 (citing *Dawdy*, 207 Ill. 2d at 173). Where a plaintiff is not a resident of the county where the incident occurred and incident did not take place in the county, plaintiff's choice is entitled to "*somewhat less deference.*" *Langenhorst*, 219 Ill. 2d at 448. Yet, while courts acknowledge that plaintiffs may forum shop, courts may not consider this practice in a *forum non conveniens* analysis. "By itself, forum shopping 'furnishes no legal reason for sustaining' a plaintiff's choice of forum." *Dawdy*, 207 Ill. 2d at 175 (quoting *Pruitt Tool & Supply Co. v. Windham*, 379 P.2d 849, 850 (Okla. 1963)).

¶ 34                                  The Present Case

¶ 35     Applying the *forum non conveniens* factors to this case, we conclude that the circuit court

properly denied defendants' motion to transfer to Lake County. Although we acknowledge that the defendants presented numerous connections to Lake County, we conclude, after considering the record, that the circuit court correctly considered all the factors and determined they do not weigh strongly in favor of transfer. The record strongly supports the trial court's ruling that a trial in Cook County would better serve the convenience of the parties and the ends of justice and therefore the trial court did not abuse its discretion.

¶ 36                                   *Plaintiff's Choice of Forum*

¶ 37    We initially find that plaintiff's choice of forum, Cook County, is owed some deference. Plaintiff is a resident of Lake County, not Cook County, and none of the allegations of negligence occurred in Cook County. See *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009) ("Before weighing the relevant factors, a court must first decide how much deference to give to a plaintiff's choice of forum."). We also decline to address defendants' argument that, because the plaintiff is foreign to her chosen forum and because the alleged negligence did not occur in her chosen forum, she likely engaged in forum shopping as our supreme court has made clear that "courts may not consider [forum shopping] in a *forum non conveniens* analysis." *Dawdy*, 207 Ill. 2d at 175; see *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 368 (1983); *Espinosa v. Norfolk & Western Railway Co.*, 86 Ill. 2d 111, 123 (1981). Therefore, we will focus our review on the relevant private and public interest factors.

¶ 38                                    *Private Interest Factors*

¶ 39    We begin by examining the first private interest factor, that defendants must establish that plaintiff's chosen forum is inconvenient and that another forum is more convenient for all parties. *Langenhorst*, 219 Ill. 2d at 444.

¶ 40    Defendants argue that the circuit court abused its discretion when it rendered this

determination. Defendants maintain that Dr. Patel's residence and part-time work in Cook County had no factual connection to the litigation which is focused solely on emergency room care rendered in Lake County. Defendants assert that when Dr. Patel's connections to Cook County are considered in this context and in light of the case law, it is evident that it sways the balance of the public and private interest factors in favor of transfer to Lake County. We now turn to examine whether the trial court abused its discretion when it considered and weighed the situs of the other defendants.

¶ 41    The record reflects that defendant Vista is located in Lake County with a registered agent in Cook County; however, it does not have any facilities located in Cook County and does not provide any medical services in Cook County. The record further reflects that APP, the principal of Dr. Patel, is a Tennessee corporation with a registered agent in Sangamon County, Illinois. APP has a single office located in Lake County at Vista. APP has no connections to Cook County. Regarding Dr. Patel, the record reflects that while he resides in Cook County, he practices medicine in DuPage County, Cook County, and Lake County. Dr. Patel, however, averred in his affidavit that, although he resides in Cook County, trial in Lake County would be more convenient for him because of his work and family are in closer proximity to the Lake County courthouse than the Daley Center.[1] Thus, two out of three defendants—including the defendant whose conduct is at issue—have a connection to Cook County. While a majority of the parties certainly have a connection to Lake County, it cannot be said that this factor strongly weighs in favor of Lake County considering the deference given to plaintiff's choice of forum and Dr. Patel and Vista's connections to Cook County. See *Fennell*, 2012 IL 113812, ¶ 18;

[1] We observe that Dr. Patel's affidavit did not include the number of years he has resided in Cook County, the hours each week he practices medicine in Cook County or Lake County, or whether his children attend school in Cook County or Lake County.

*Langenhorst*, 219 Ill. 2d at 448 (plaintiff's choice is entitled to "*somewhat* less deference"). Indeed, Cook County is Dr. Patel's home county. See *Kwasniewski*, 153 Ill. 2d at 553-54. Accordingly, we find that the first private interest factor weighs in favor of Cook County.

¶ 42    Defendants nonetheless maintain that plaintiff and her next of kin are all Lake County residents and that, as such, it would require them to travel up to an additional two hours to reach the Daley Center from their home while, in contrast, it would only take them six minutes to reach the Lake County courthouse. In urging this court to consider the travel time between the Daley Center and the Lake County courthouse (despite plaintiff's affidavits to the contrary) defendants rely on *Hale v. Odman*, 2018 IL App (1st) 180280, ¶ 35. In *Hale*, the reviewing court stated that one "must look beyond the declarations of convenience and realistically evaluate convenience and the actual burden each party bears when traveling to the plaintiff's chosen forum." *Id.* We decline to read *Hale* as requiring the court to discount plaintiff's affidavits as defendant suggests. In making this statement, the *Hale* court was merely observing that the *forum non conveniens* analysis requires a court to look to the totality of the circumstances to determine the convenience to the parties. We observe that defendants cannot assert that plaintiff's chosen forum, Cook County, is inconvenient to her even though she does not reside in Cook County. *Langenhorst*, 219 Ill. 2d at 448. We, however, reiterate that her chosen forum is accorded less deference because she neither resides in Cook County nor did the allegations of negligence occur in Cook County. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990).

¶ 43    We now turn to the second private interest factor—the relative ease of access to sources of testimonial and documentary evidence. The record discloses that a great majority of the witnesses reside or work in Lake County. Plaintiff also provided affidavits from its witnesses in which they averred it would not be inconvenient for them to testify in Cook County. Despite

their 90 plus witness disclosure list, defendants only provided two affidavits from Dr. Patel and nurse Ogden in which they averred that it would be inconvenient for them to testify in Lake County. We further observe that the record is unclear as to where these 90 witnesses work and/or reside, what their relationship to plaintiff is, and what their relevant testimony would be. We thus agree with the circuit court's finding that a good number of potential witnesses will not testify in person and those that do will likely testify via videotaped evidence deposition. We also note that Dr. Patel does reside in Cook County and while the Lake County courthouse may be more convenient to him, it is not unreasonable for him to attend trial in Cook County. Accordingly, we conclude regarding witness testimony that this factor does not strongly weigh in favor of transfer to Lake County. In addition, medical records are now provided in an electronic format that can be easily distributed to the parties. See *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 128. As the documents can be easily produced in either Cook County or Lake County, we find this factor to be neutral. See *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008) ("the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively."

¶ 44    The third private interest factor—the availability of compulsory process to secure attendance of unwilling witnesses—is neutral. As the witnesses identified hail from Illinois, compulsory process is available in either Cook or Lake County. See *Bird v. Luhr Bros., Inc.*, 334 Ill. App. 3d 1088, 1094 (2002). While defendants argue that the circuit court failed to consider that pursuant to Rule 237 compulsory witnesses must be paid mileage, they fail to identify which witnesses would be reluctant to testify and therefore, at this time, this point is merely speculative. See *Benedict v. Abbott Laboratories, Inc.*, 2018 IL App (1st) 180377, ¶ 45.

¶ 45    We next address the fourth private interest factor—the cost to obtain attendance of the

willing witnesses. We find this factor to be neutral. The alleged negligence occurred in Lake County. A majority of the witnesses are from Lake or Cook County. At this point in time, neither party has identified their expert witnesses. Regardless, any witness flown in to testify would have to travel to one of the airports located in Chicago. Arguably, this would put them closer to Cook County than Lake County and require fewer transportation costs. But, as defendants point out, the cost of hotels near the Daley Center is greater than those in near the Lake County courthouse. Accordingly, we conclude this factor is neutral.

¶ 46     The fifth private interest factor is the possibility of viewing the premises. The circuit court determined that this factor did weigh in favor of transfer to Lake County and we agree. We, however, also agree with the circuit court's finding that viewing the premises "would be highly unlikely."

¶ 47     Regarding the sixth private interest factor—other practical considerations, making trial easy, expeditious, and less expensive—is neutral and does not favor transfer. As previously stated, many of the witnesses in this case are medical providers who work and/or reside in and around Cook County. See *Evans v. MD Con, Inc.*, 275 Ill. App. 3d 292, 298 (1995) ("[W]e question whether any relatively close forum could be considered to be inconvenient on an absolute scale given that we live in an age of automobiles, well-paved roads, and commuter rail service."). Defendants also note that plaintiff selected representation by a law firm that has offices in Lake County. We observe that plaintiff's law firm also has offices in Cook County and therefore this factor is neutral.

¶ 48                              *Public Interest Factors*

¶ 49     Next, we address the relevant public interest factors, the first being the administrative difficulties flowing from court congestion. Accompanying their motion to transfer, defendants

- 16 -

attached the 2017 Annual Report of Illinois Courts, which documented the civil circuit court caseload. Our supreme court has found that this annual report is a proper source of reference in assessing court congestion, therefore, we will rely on this data in our analysis. See *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 403 (1991). The parties both agree that this report indicates Cook County is more congested than Lake County and that the circuit court appropriately examined these statistics when it determined that it favored Lake County. Indeed, since the parties commenced this litigation, the 2018 and 2019 annual reports of the Illinois Courts have been published and indicate that such congestion remains. We find the circuit court did not abuse its discretion when it found that this factor weighs in favor of a transfer to Lake County.

¶ 50　　We now turn to address the second public interest factor, the unfairness of burdening citizens in an unrelated forum with jury duty. The circuit court found that, under this factor, Cook County had a "significant interest" in the litigation because Dr. Patel is a Cook County resident and also practices medicine in Cook County.

¶ 51　　Defendants assert that it would be "manifestly unfair" to impose the expense of a lengthy and complex trial and the burden of jury duty on the residents of Cook County in a suit brought by a Lake County plaintiff for emergency room care that was rendered solely in Lake County, to a Lake County resident, at a Lake County hospital, by caregivers who mostly reside or work in Lake County.

¶ 52　　In determining the weight of this factor, the circuit court gave significant weight to the fact that Dr. Patel also practices medicine in Cook County. While Dr. Patel certainly practices medicine in Cook County, based on the specific facts in the record, we cannot agree with the circuit court's assessment that Cook County has a "significant" interest over Lake County. At

most their interest in the litigation is equal as Dr. Patel practices medicine in both counties. Given the fact that we must perform an unequal balancing test in favor of plaintiff's chosen forum (see *Langenhorst*, 219 Ill. 2d at 448), we agree with the circuit court that this factor does weigh in favor of plaintiff's chosen venue albeit not "significantly."

¶ 53     In rendering this determination, we have considered the cases cited by defendants. Specifically, in support of their argument that "Cook County should not bear the financial burden of this action given that the forum with the compelling interest in medical care that is rendered in their community is Lake County," defendants rely on *Schuster v. Richards*, 2018 IL App (1st) 171558, ¶ 41. But defendants fail to address the fact that Dr. Patel practices medicine in both Lake and Cook counties thus rendering both counties with an interest in the litigation. Defendants also cite *Khan v. Enterprise Rent-A-Car Co.*, 355 Ill. App. 3d 13, 27 (2004); however, that case involved a corporate defendant doing business in the plaintiff's chosen forum not a defendant physician who practices medicine in both forums. As the *Khan* court noted, our supreme court in *Dawdy* "expressly rejected the contention that a corporate defendant doing business in the chosen forum affects the *forum non conveniens* issue" and therefore found that the public interest factor of local interest weighed in favor of a transfer. *Id.* Accordingly, we find the cases cited by defendants to be distinguishable from the case at bar.

¶ 54     Finally, we address the third public interest factor, the interest in having local controversies decided locally. Defendants contend that the circuit court abused its discretion when it "perfunctorily mentioned" this factor and did not conduct an analysis of the facts substantiating a significant Lake County interest. Defendants further assert that the circuit court allowed Dr. Patel's Cook County connections to "completely eclipse" this public interest factor.

¶ 55     In this case, the allegations of negligence arise out of the care provided to Quavia in Lake

County by a physician who resides in Cook County and practices medicine in Cook County. While the record demonstrates that Dr. Patel does not have hospital privileges in Cook County or treat patients in an emergency room setting in Cook County, it does establish that he is treating patients in Cook County. We recognize that our supreme court has held that the location of the injury giving rise to the litigation is the most significant factor in giving any county a local interest (*Dawdy*, 207 Ill. 2d at 183), but we nonetheless find that due to fact Dr. Patel also practices medicine in Cook County, this factor does not *strongly* weigh in favor of Lake County.

¶ 56    Defendants rely on *Bruce v. Atadero*, 405 Ill. App. 3d 318, 326-27 (2010), as supporting the position that the circuit court accorded Dr. Patel's Cook County connections too much weight. However, the procedural posture of *Bruce*, distinguishes it from this case. In *Bruce*, the plaintiff brought wrongful death and survival claims in McHenry County against the hospital that treated the decedent in McHenry County and against the treating physician who resided and practiced in McHenry County. *Id.* at 319-20. After discovery had proceeded for almost two years in McHenry County, the plaintiff voluntarily dismissed the McHenry County action and refiled in Cook County, where the hospital also had some facilities. *Id.* at 320. This court reversed the trial court's denial of the defendants' *forum non conveniens* motions on several grounds but primarily due to the blatant "forum shopping that our supreme court has expressly held should not be permitted." *Id.* at 332. In the case at bar, there are no issues of filing and refiling, as there were in *Bruce*. In addition, in *Bruce*, both defendants resided in McHenry County, where this court ordered the case transferred back to. *Id.* at 319-20. Similarly, in the case at bar, Dr. Patel resides and practices medicine in Cook County, where this court affirms the case should continue. We further observe that defendants rely on *Bruce* for its finding that the circuit court abused its discretion when it gave too much weight to the fact the defendant-

hospital operated two physical therapy facilities in Cook County. *Id.* at 324. In contrast, Dr. Patel's residence and practice of medicine in Cook County is substantially different from a defendant-hospital operating a facility in the county, particularly where it is Dr. Patel's actions as a physician are under scrutiny. Accordingly, *Bruce* does not support defendants' argument.

¶ 57    Defendants similarly argue that *Bland v. Norfolk & Western Railway Co.*, 116 Ill. 2d 217 (1987), also supports their position. In particular they assert the *Bland* court held that the fact the defendant corporation was a resident of Madison County and conducted operations there, that the plaintiff occasionally worked there, and that two treating physicians were located there, did not provide a sufficient factual connection with the litigation to deny the defendant's motion to transfer the case to Macon County. We find *Bland* to be inapposite. In *Bland*, the plaintiff brought an action under the Federal Employers' Liability Act in the circuit court of Madison County against the defendant to recover for personal injuries suffered during the course of his employment with the defendant. *Id.* at 220-21. A Federal Employers' Liability Act claim is significantly different from a medical malpractice action, particularly where, as here, the physician who is alleged to have committed malpractice resides and practices medicine in the county where the litigation is filed. In addition, the *Bland* court focused on the fact that two of plaintiff's treating physicians had offices in Madison County and noted that "[o]ne should be cautious, however, not to give undue weight to the fact that a plaintiff's treating physician or expert has an office in the plaintiff's chosen forum. To do so would allow a plaintiff to easily frustrate the *forum non conveniens* principle by selecting as a witness a treating physician or expert in what would, in reality, be an inconvenient forum." *Id.* at 227. Here, it is not plaintiff's treating physicians who have a connection to Cook County but a named defendant, Dr. Patel. In a *forum non conveniens* analysis where this court must weigh the public and private interest

factors and look at the totality of the circumstances. See *Guerine*, 198 Ill. 2d at 518. In doing so, we find that Dr. Patel's residence and work in Cook County distinguishes this case from *Bland*.

¶ 58     Again, in *Allee v. Myers*, 349 Ill. App. 3d 596 (2004), nearly all of the private and public interest factors weighed in favor of the defendant's suggested county, Stephenson County, rather than the plaintiffs' chosen forum, Cook County. *Id.* at 606-07. In *Allee,* the focus of the claim was a commercial building involved in the negligence action against the defendant building owners who failed to notify tenants of the felony status of the codefendant who kidnapped and raped one of the plaintiffs, and not where those individuals purchased the weapon and committed the sexual assaults. *Id.* at 606. Additionally, there was the possibility of having the jury view the building. *Id.* at 607. Further, the Cook County witnesses' testimony would most likely have related to the codefendant's conduct, rather than the conduct of the defendant property owners. Thus, venue strongly weighed in favor of the county of the situs of the building. *Id.* at 607.

¶ 59     Ultimately, the burden is on the defendant to establish that the relevant private and public interest factors " 'strongly favor' " his choice of forum and merit disturbing the plaintiff's initial choice. *Langenhorst*, 219 Ill. 2d at 444 (quoting *Griffith*, 136 Ill. 2d at 107); accord *Fennell*, 2012 IL 113812, ¶ 17. Unless this burden is met the plaintiff's forum choice is rarely disturbed. See *id.* We cannot say that defendants met the burden in this case.

¶ 60     It is conceivable that, on these facts, a different conclusion could be reached. Yet our duty is not to reweigh the private and public interest factors, but to determine whether the trial court abused its discretion when it denied the motion to transfer. See *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 33. The trial court is thus afforded considerable discretion in its ruling. *Langenhorst*, 219 Ill. 2d at 441. Based on our review, we cannot say the trial court's decision

was so unreasonable that no court would take its position. Accordingly, the judgment of the trial court is affirmed.

¶ 61                                    CONCLUSION

¶ 62    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 63    Affirmed.

¶ 64    PRESIDING JUSTICE GORDON, specially concurring:

¶ 65    I agree that the decision of the circuit court of Cook County must be affirmed, but I must write separately to take judicial notice of a factor not completely considered by the circuit court and not mentioned by the majority. Further, the majority decision appears to use the *de novo* standard of review instead of the abuse of discretion standard in deciding this case, even though it states that the abuse of discretion standard was applicable. In paragraph 35 of the majority decision, the majority states, "we conclude, after considering the record, that the circuit court correctly considered all the factors and determined they do not weigh strongly in favor of transfer. The record strongly supports the circuit court's ruling that a trial in Cook County would better serve the convenience of the parties and the ends of justice and therefore the circuit court did not abuse its discretion." That statement may give the impression that the majority first made its own determination *de novo* after balancing the relevant factors instead of making a determination of whether the circuit court abused its discretion in balancing the relevant factors. Other appellate courts have used the same words as the majority used here, including a case in which I was the author.

¶ 66    Since both parties agree that we must apply an abuse-of-discretion standard of review in the case at bar, the issue, then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the circuit court acted in a way that no reasonable person

would. *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009). Our supreme court has repeatedly noted that the *forum non conveniens* doctrine gives courts discretionary power that should be exercised only in exceptional circumstances in transferring cases to other jurisdictions when the interests of justice require a trial in a more convenient forum. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006). See also *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176 (2003) (" '[t]he test [in the circuit court] *** is whether the relevant factors, viewed in their totality, *strongly* favor transfer to the forum suggested by defendant' " (emphasis added) (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990))). Thus, as a practical matter, rarely are cases transferred to other jurisdictions when venue is found in the jurisdiction where the lawsuit is filed. "The plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, and the plaintiff's forum choice should rarely be disturbed unless the other factors strongly favor transfer." *First American Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002) (citing *Griffith*, 136 Ill. 2d at 106; *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 372-73 (1982); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); Restatement (Second) of Conflict of Laws § 84, comment c (1971) ("since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons")). "However, the plaintiff's interest in choosing the forum receives 'somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum.' " *Langenhorst*, 219 Ill. 2d at 442-43 (quoting *Guerine*, 198 Ill. 2d at 517).

¶ 67    The appellate court will reverse a circuit court's *forum non conveniens* decision only if it's shown that the circuit court abused its discretion in balancing the relevant factors. *Langenhorst*, 219 Ill. 2d at 441. A circuit court abuses its discretion in balancing the relevant factors of a *forum non conveniens* decision only where no reasonable person would take the view

adopted by the court. *Langenhorst*, 219 Ill. 2d at 442.

¶ 68    In analyzing a circuit court decision, we first look at the weight the circuit court gave to plaintiff's choice of forum before the circuit court weighed the relevant factors. *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶ 42. As noted, normally, a plaintiff's choice of forum is a substantial factor in deciding a *forum non conveniens* motion; however, where the plaintiff chooses a forum other than where he resides, his choice is not entitled to the same weight. *Dawdy*, 207 Ill. 2d at 173-74.

¶ 69    While the deference to be accorded a plaintiff as to his choice of forum is less when the plaintiff chooses a forum other than where he resides, " ' "the deference to be accorded is only *less*, as opposed to *none*." ' " (Emphases in original.) *Glass v. DOT Transportation, Inc.*, 393 Ill. App. 3d 829, 834 (2009) (quoting *Guerine*, 198 Ill. 2d at 518, quoting *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997)). Thus, plaintiff's choice of a foreign forum receives "some deference" but less deference than if he had chosen his home forum. *Vivas*, 392 Ill. App. 3d at 657-58.

¶ 70    In the case at bar, the circuit court did make that consideration. However, in paragraph 37, the majority makes a finding not that the circuit court did not abuse its discretion in making that consideration but states, "[w]e initially find that plaintiff's choice of forum, Cook County, is owed some deference." When an appellate court reviews a circuit court's *forum non conveniens* order, the issue is not the detail of the underlying order, but whether the circuit court abused its discretion by giving a certain factor weight that no reasonable person would do or by missing an important factor that should be given weight in the court's analysis of the relevant factors. *Estate of Rath v. Abbott Laboratories, Inc.*, 2012 IL App (5th) 100096, ¶ 23. However, an appellate court may affirm a circuit court's *forum non conveniens* order on any basis found in the record.

*Estate of Rath*, 2012 IL App (5th) 100096, ¶ 43 (Spomer, J., specially concurring).

¶ 71     It is the job of the appellate court to review all relevant factors to determine whether the circuit court abused its discretion in deciding the weight that is given to the factor, not deciding that the circuit court's determination was correct, but only whether the circuit court abused its discretion in its decision-making process. *Ruch*, 2015 IL App (1st) 142972, ¶ 38. In determining whether a case should be transferred to another jurisdiction, the circuit court conducts an unequal balancing test to determine whether plaintiff's chosen forum prevails. In other words, the relevant factors must strongly show that transfer is warranted. *Langenhorst*, 219 Ill. 2d at 442-43. In examining the first private interest factor, the defendants must establish that plaintiff's chosen forum is inconvenient and that another forum is more convenient for all parties. *Langenhorst*, 219 Ill. 2d at 444. However, a defendant cannot argue, as defendants did here, that Lake County is more convenient for plaintiff. At the time when a *forum non conveniens* motion is presented, the parties do not know what witnesses will testify because discovery has not been completed and expert witnesses are usually not in place. As a result, the parties provide possible witness lists instead of the actual witnesses who will testify, making it a difficult venture for the circuit court to determine the actual convenience of the parties.

¶ 72     When an appellate court examines the public and private interest factors and makes determinations and conclusions, the words that the author choses may give the impression that they are deciding those factors *de novo* because of their choice of words; however, the appellate court's only determination is whether the circuit court abused its discretion in deciding those relevant factors.

¶ 73     The majority more than adequately reviewed all of the relevant factors that the circuit court considered and which are in the record of this case in making its determination to affirm

the circuit court's finding that the circuit court did not abuse its discretion in denying the *forum non conveniens* motion. However, the circuit court and the majority did not take judicial notice of the complete relationship of Lake County to Cook County. The parties and the circuit court, as well as the majority, did consider the time of travel to the various courthouses in the two counties.

¶ 74 However, I must take judicial notice of the fact that Waukegan, where the Lake County courthouse is located, as compared to the Richard J. Daley Center, where the courthouse is located in Chicago, are 34.5 miles from each other on Google Maps, and a driving distance of 40.2 miles via I-94W, which takes 51 minutes in non-rush time traffic in accordance with the Google Maps, and runs one hour via I-290W and I-294N for a 55.7-mile journey. I further take judicial notice of the fact that Lake County is adjacent to Cook County and that many people commute every day from Lake County to work in Chicago. Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is *** generally known within the territorial jurisdiction of the trial court ***."); Ill. R. Evid. 201(c) (eff. Jan. 1, 2011) ("A court may take judicial notice, whether requested or not."). The close proximity of the two counties, and the many roads and trains between the two, reduces any practical problems. *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826, 844 (2009) (observing "the close proximity of Lake County to Cook County"); *Huffman v. Inland Oil & Transport Co.*, 98 Ill. App. 3d 1010, 1018 (1981) ("arguments regarding convenience to the parties and the witnesses [are] of little merit where the Missouri forum suggested by defendant was only 15 miles from the chosen forum"). It is true that, during rush hours, the major highways are congested, but that would occur no matter what county the case was filed in.

¶ 75 Thus, consideration of all of the private and public factors do not lead to the conclusion

that the circuit court abused its discretion. When an appellate court uses the more restrictive *de novo* standard of review and affirms the circuit court, that procedural error will not cause a reversal of its decision. It is only when that restrictive standard is used and the circuit court is reversed where the appellate court can be reversed if there is a showing that the circuit court did not abuse its discretion in making its findings.

**Nos. 1-20-0528 & 1-20-0592 cons.**

| | |
|---|---|
| **Cite as:** | *Evans v. Patel*, 2020 IL App (1st) 200528 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-7917; the Honorable Kathy M. Flanagan, Judge, presiding. |
| **Attorneys for Appellant:** | Laura G. Postilion, of Quintairos, Prieto, Wood & Boyer, P.A., of Chicago, and Hugh C. Griffin, Jennifer Ries-Buntain, Basile Souferis, and Katie M. Bennett, of Hall Prangle & Schoonveld, LLC, for appellants. |
| **Attorneys for Appellee:** | Alex Campos, of Dudley & Lake LLC, of Chicago, for appellee. |